Thank you. Good morning, Your Honor. May it please the Court. Wade Hall, representing Diamond Electric. The central document in this case is the document labeled, Letter of Intent. This Court's opinion in the Rennick case cited in the brief implies that the very name, Letter of Intent, would seem to be a non-binding expression. However, the Court has added, unless circumstances otherwise suggest. And in this setting, the circumstances clearly and definitely otherwise suggest. The letter itself states that the letter is contingent upon executing a contract between the owner and Pace Pacific. That contingency occurred 30 days later. The work or scope of performance is designated in the Letter of Intent by reference to the contract document. That's a unique feature of the subcontract agreement. The agreement is merely an allocation of a portion of the work that's already been detailed and specified in the contract documents. The general contract is included in the bid documents, so those terms and conditions are known. The parties are known, the price is known, and the time of performance is also specified. The language in the Letter of Intent was not, we agree, it was, it is Pace's intention. Correct. Why doesn't that, together with the fact that the Letter of Intent obviously contemplates the subsequent signing of a contract, mean that the Letter of Intent was intended not to be a contract? Well, there are numerous reasons why. But first of all, the Nevada law invoked by the bidding documents is, locks the contractor into a subcontractor. The subcontractor is required to be specified immediately after the contract is, after the bid opening. They must, within two hours, specify who their subcontractors are going to be. This Letter of Intent was issued in response to Diamond's request that it be locked in, because this is March of 2006. Copper prices are escalating. Diamond's materials are... My thought was, when I read this record, well, this isn't a contract. At most, it's an agreement to agree, and I think it's not even that. It's just an expression of intention, subsequently, to agree. But the restitution claim looked as though it would be a lot stronger if, because of this language, please consider this letter as Diamond Electric's notice to proceed with activities such as shop drawings, submittals, payment schedule of values, materials procurement. And materials procurement caught my eye. Did they procure materials for which they have not been reimbursed? Yes. What did they acquire? Yes, and that's undisputed under the facts of this case. And what didn't they get reimbursed for? No. Not only were they not reimbursed, but the value engineering that they had engaged in... I know they did value engineering and shop drawings that they didn't get paid for, and that is arguably reliance damages and arguably just bid expenses that contractors expect to incur without reimbursement if they don't get the contract. I asked about materials procurement. Did they get conduit or something like that that they didn't get paid for? Yes. Yes, I understood you, and the answer is clearly yes. That's undisputed under the facts of this case. But, Counselor, you didn't plead reliance, did you, in your lawsuit? Pardon? You didn't plead reliance in your lawsuit, did you? I didn't plead reliance as a cause of action. That's a consideration argument. Here, the argument is that the letter of intent does form a contract because it specifically directs us to begin to proceed with the contract. So if Pace didn't get the general contract, under your view, your client could sue Pace for the costs expended so far, loss that he'll have with the suppliers, et cetera? No, because that's a specific condition in the letter of intent that Pace get the contract. Okay. That is a risk that you will sue. Okay. So standing on its own, it's not a contract. It takes into consideration that Pace must get the contract. Yes, which they did. And that contingent has been eliminated. And that contract then becomes a part of this contract that you believe you have from this letter. Is that correct? The contract is formed at the time of the letter of intent. It has a condition subsequent that Pace must get. Okay. What I'm getting at, obviously, is that inside the contract that Pace has with the builder, the builder organization and the architect have a right to veto subcontractors. They do. Under your theory, if under your theory this is a letter of intent with a contract that will include Pace's contract, then doesn't it include this proviso that there can be a vetoing of subcontractors? Yes, absolutely. So when they subcontract. On a timely basis. It's got to be reasonable. Then I'm getting to the question I really need some help on. Okay. So aren't they in a position that if the builder or the contractor say that Diamond is not to be a subcontractor, isn't Pace then free from any liability? Yes, I would agree with that. And again, that's part of the risk assumed and incorporated into the letter of intent because letter of intent refers to the contract document. So Diamond was subject to that risk. That didn't happen. It's a condition subsequent. It did not occur. So the contract can be formed with letter of intent with these conditions subsequent. But in this case, the rejection was clearly pretextual. Pace had already repudiated the contract by secretly employing a lower electrical contract. So you must then demonstrate, I take it, that there was really no indication, the builder and the architect somehow were committing a fraud or something when they vetoed Diamond? Oh, absolutely. It was clear subterfuge. And is there a finding of that? They rejected Diamond 45 days after they'd signed a contract with the Nelson Electric that they bid shopped with and got a lower price. They go through this dog and pony show where they submit the list of contractors to the architect. Well, at that point in time, Diamond wasn't on the list of subcontractors. They'd already hired Nelson and they were on the job working. That isn't subterfuge. Well, they said they were doing preliminary work. But is there a finding of fact on that issue? No. The district court did not address that. Just skipped right over it. I don't understand the subterfuge. It sounds like the bids came in high. The owner says, see if you can rejigger this some and get the numbers down. All the subs, potential subs, the general, are all asked to do that, and they call it value engineering now. And both Diamond Electric and its competitors were doing the same thing, including the competitor that got the deal, and then the low bid got the deal. I don't understand what's sturdy. No. What's dirty, first of all, let me tell you this. A low bid whom the Indians didn't object to. I mean, the owner here objected to Diamond. Diamond Electric did the value engineering. There's nothing in the record that suggests that Nelson Electric did any value engineering. Nelson bid using Diamond Electric's value engineering. That's the record. Is there any evidence of conspiracy in this record? There isn't a theory of civil conspiracy. No, there isn't a theory of civil conspiracy pled. We think we have the contract, and we think we're looking for contract damages. Yes, but the last minute or two you've been talking about what sounds like a conspiracy, kind of a lack of intention to honor the letter of intent, and going around Diamond to deal with other people. Oh, absolutely, but that's a repudiation of the contract, and we're working on contract theory. We think we have a good cause of action under contract theory under the law that we've cited in the brief. So if Pace takes a bid from somebody else, notwithstanding the letter of intent, that in itself is a repudiation of the letter of intent? Is that what you're saying? Yes. All right. I don't understand your theory on value engineering. I thought the record showed that Nelson was indeed doing value engineering, while Diamond Electric was also doing it, and that Nelson was doing it in connection with its work with another potential general. Clark and Sullivan, I think it was called, because Pace didn't have the deal locked in either. Well, Pace had the deal locked in on April 20th. There is argument in the record that that occurred, but the value engineering that's accepted and used in the contract is that provided by Diamond, and that's the state of the record. Is there something special or unique about what Diamond came up with? I mean, a lot of construction comes in high and then figure out ways to cut. Yes. It's just like a change order during the course of construction. We don't invalidate contracts, construction contracts, because we get change orders during the process of construction. They change the specs. They change the price based on an agreed procedure. That's all value engineering is, and it occurs before the construction actually starts. So there's nothing new or unique about value engineering, but, yes, these are Diamond's value engineering elements that are incorporated into this contract. I didn't ask you if there was anything unique about value engineering. I asked if there was something unique about Diamond's contribution that nobody else had thought of. Well, when they adopt our value engineering, I think that answers the question that it is unique. Not necessarily. It doesn't at all. Something may be pretty obvious. For example, if somebody said, I want the uprights 12 inches apart, and the obvious thing is no, 16 inches is what the code says, everybody is going to come up with 16 inches. I just admit that that's not the state of the record, Your Honor, and I'd like to read. Let me ask you one more thing before you sit down. Renwick versus OptionCare is among the scarce cases that touch on letters of intent. I used to see this problem in practice, and I never could find any authority on it. The idea of Renwick is very clear in Renwick, is to deal with the problem of a kind of fraud by someone who sues somebody else on a letter of intent. The parties usually need the letters of intent so they can put together a deal before they have a deal. And then when they don't get a deal, some of them falsely claim that they had one  So that's what Renwick versus OptionCare was all about. Why is this case not like that? Because of the oral assurances, because of the circumstances that initiated the letter of intent, and because the terms of a contract are there in place and fixed and agreed to by the parties. Thank you, counsel. You may reserve your time. Thank you. We'll hear from Pace Pacific. May it please the Court, Tom Ryan on behalf of Pace Pacific Corporation. Could you speak just a little louder, please, Mr. Ryan? Thank you. I'm sorry. Let's begin at the beginning. This is a letter of intent. It evidences an intention. It is not called binding contract. It is not called contract. It is not called an agreement. It expressly contemplates future further documentation, which is a point picked up in the Renwick case that has been cited by both parties in this and a decision by Judge Kleinfeld. It expressly contemplated a future contract. Two contracts, really. One, a contract, which was the general contract, between Pace and the Reno-Sparks Indian Colony, which was developing this health center, and two, an executed subcontract between Pace, if they won the general contract, and Diamond Electric. There were two contingencies that were incorporated explicitly into the letter of intent, and the future subcontract contingency, in other words, the contract between Pace and Diamond, never came to pass. A copy of a subcontract was requested specifically by Pace on July 27. It was expressly rejected. Excuse me, it was specifically requested by Diamond on July 27, and it was rejected by Diamond on August 18. They wanted changes made. They didn't reject the subcontract, and they just wanted changes made. Here's what they say, Your Honor. It was your client's standard form. It was our client's standard form, and here's what they've said in their reply brief. They characterized that correspondence of August 18 as an attempt to negotiate terms of the subcontract. It does not constitute a rejection of the subcontract. Well, we might quibble about the difference between a nonacceptance and a rejection, but this was clearly not an acceptance. The letter of August 18 referred specifically to one of these general conditions in the AIA documents, paragraph 5.3.1, and the letter of August 18 of Diamond says to Pace, I have reviewed the standard subcontract agreement. Believe that you have included provisions that are in conflict with the general conditions. Referring to paragraph 5.3.1, they continue on. Please call me upon receipt. I look forward to discussing this matter with you. This is not an acceptance of the form of subcontract that was tendered by Pace to Diamond Electric, and if you look at paragraph 5.3.1, which is the basis for their rejection slash attempt to continue negotiations, it doesn't stand for the proposition that Diamond believes that it stands for. Diamond suggests to this court that paragraph 5.3.1 of the general conditions means that it must enjoy all of the rights and remedies that Pace might enjoy vis-à-vis the Reno-Sparks Indian Colony, the owner. Well, if you look at paragraph 5.3.1, which is in the record excerpts at page 59, it establishes precisely the opposite. It says that paragraph 5.3.1 provides that each subcontract agreement shall preserve and protect the rights of the owner and the architect, and shall allow to the subcontractor unless specifically provided otherwise, the benefits of all rights and remedies that the contractor enjoys vis-à-vis the owner. And upon the request of the subcontractor, the contractor, Pace, is to provide the terms and conditions of that proposed subcontract that may be at variance with the prime contract documents. We don't have, this isn't an attempt to negotiate, it's a rejection of the subcontract. It never came to pass. That was a condition subsequent or a contingency or whatever else you might want to call it. It was specifically referenced and contemplated in the letter of intent, and it never happened. Well, of course, your adversary is going to say, well, that doesn't matter because the letter of intent itself is a contract that something else didn't occur, that's not going to be, that's not going to make any difference. And the district court just dealt with that letter of intent. Let me ask you about this vetoing by the tribe and the architect of Diamond. Your adversary says, yes, that happened, but it was part of what Judge O'Scanlan says, and it looks like to me is correct, sort of a conspiracy approach. But the district judge didn't deal with that, did he? That is, in his opinion, I don't know where he made any factual findings on that. Yeah, he did make a factual finding in the sense that I think it's footnote number three in the order where he said that the ability of the owner and the architect to reject the subcontractor constitutes a separate and independent basis for entering summary judgment. Did he deal with the contention that you say that's on page three? I think it's a footnote. I think it's footnote three. I don't have the decision in front of me. I think it's footnote three to the decision. But that is a reference to the separate and independent basis on which that judge, Judge Sandoval, entered summary judgment on behalf of Pace. To answer your question more specifically, there was no particular discussion in Judge Sandoval's order that relates to the argument of pretext, conspiracy, subterfuge, and I can address that if you'd like. Could you help me on something else? Restitution. Pace says that it not only did shop drawings and value engineering, it also acquired materials in reliance on the expectation created by the letter of intent. Assuming for purposes of discussion that the letter of intent is not a contract, why wouldn't Diamond Electric have a good restitution claim for those expenditures? Well, the presumption in the question is that there's record support for the notion that Diamond, in fact, ordered any materials. There is none. Second, the alternative claim, this is a two-claim-for-relief complaint. The alternative claim is not promissory estoppel, and therefore it does not follow that what Diamond did. It's two different things. Restitution and promissory estoppel are two different things. Section 90 of the restatement is a way of substituting reliance for consideration for the formation of a contract. Restitution is a way of adjusting where there is no legitimate contract claim, there is no good contract claim for any reason, but justice requires that one party make restitution to another. They're a whole different theory, even different restatements. One is the restatement of restitution, one of contracts. As I understand it, though, the unjust enrichment means not only that there has to be an enrichment, in other words, a benefit conferred, which gets back to the point of whether there were materials ordered or whether Pace somehow benefited from this value engineering exercise that was undertaken by Diamond Electric and three other potential alternative firms. That's one basis for restitution. But if another party merely incurs costs, even though they do not benefit the other party, there can also sometimes be restitution. For example, if a party causes a considerable expenditure by another in reliance upon a demand for some service, you say there's no record support for acquisition of materials. Correct. Now, what about the claim that they did value engineering, the value of which was appropriated by Pace and used without compensation to Diamond? Well, if I could refer back to Your Honor's opinion in Rennick, you noted that a party's changing its position in reliance, and I appreciate that I may be rubbing up against the point that you brought home to me previously, but you noted that a party's changing position in reliance on expectation that a contract, in this case the subcontract, will be made, quote, cannot turn the non-promise into a contract, unquote. So the reliance or the expenditure or the costs or expenses incurred by Diamond would have to be reasonable in connection with the expectation that a subcontract would be entered into. They rejected the very subcontract. We have briefed the point about value engineering, which is somewhat of a buzz phrase, value engineering as being non-compensable. There are some kinds of requests for proposals that government makes and bidding that's done in construction and various analogous systems where everybody knows it's going to take a lot of money even to seek a contract to submit the proposals. So everybody is offered a certain amount of money to prepare a proposal. For example, where architects do beauty shows, sometimes they're all given some sum of money for their proposal for the building so that they don't have to make the models and drawings for free. Other times, everybody's on their own, and there's an understanding that you want to make a bid, make a bid. Kind of like if you call up somebody and ask them, what will it cost you to pave my driveway? They don't get reimbursed for driving over to your house and telling you it will cost $12,000. Sometimes it's really not at all clear from the context, and I'm wondering which this fits into. Well, all I can do to try to respond to that question is to point out that there were a number of competing prime contractors. There were four potential electrical fire subcontractors. They're all submitting or going through their value engineering exercise because the initial bids came up well over the budget of the Reno-Sparks Indian Colony, the owner of the project. It seems on the record that the value engineering that occurred, and it occurred over a long period of time, is a non-compensable exercise. What value engineering of Diamond Electrics? They say that Pace appropriated their value engineering ideas without paying them. They say that they appropriated. I heard him say that they adopted. There's no record support for that. There is record support for the proposition that Nelson Electric was involved in its own value engineering exercise with presumably its own suppliers based on its own relationships. There's no suggestion in the record. Some ways of cutting a bid are just the usual sorts of things people do, and every now and then somebody thinks of something unique and special, like let's not do this type of heating system at all. Let's use a different type of thermostatic control or radiant heating or something. Did Diamond come up with something like that that was used in the project? Nothing that I can see in the record. Further to your question previously, late in the exercise, late in the value engineering exercise, the owner said we're going to reduce the scope of the project by 6,000 square feet. There is nothing creative or unique that was provided by either Nelson Electric or Diamond Electric or any other electrical fire subcontractor that constitutes a work product that merits compensation. Counsel, your opponent suggests that this is covered by the public works provisions of Nevada law. What's your response? Well, the response is twofold. Number one, Chapter 338 of the Nevada Revised Statutes doesn't apply. Because? For the reasons expressed by the district court. This is not a government public works. It doesn't fit within the definition of public works. Is that because the colony is not a government agency? Yes. Or what? What's the precise reason why it doesn't come under it? Well, if you follow the definition under Chapter 338, the colony, an Indian tribe, doesn't fit within any one of those components, which I frankly don't know off the top of my head, but there were multiple bases on which a project could be deemed a public works statute under Chapter 338. This was not one of them. Second, even if you concede that Chapter 338 somehow has relevance or applicability to the situation, under Chapter 338, the owner, namely the Indian colony, would retain the right to reject a proposed subcontractor, just as it did under the AIA general conditions. Let me ask one other question. I know you're past your time, but I've gone back to Read Footnote 3, and I thank you for referring it to me, and it does indicate that's an alternative finding. The difficulty I have is that it seems to me, before the district court could make that finding, there would have to be some findings of fact dealing with whether or not, as counsel indicated, there was some fraud or otherwise. I don't find that in the opinion of the district judge. So how do we treat that footnote? Well, I think it's borne out in the record why, and in the declarations that are part of the record, why it was that Pace, under the circumstances here, had to develop a Plan B because. Well, I understand, as you read the record. But as he reads the record, there's an opposite factual scenario, and that's why we have district court judges to make findings of fact. And my question is, before we could affirm Footnote 3, wouldn't we have to have findings of fact on those issues? I don't know. I'm unsure. I think that the record supports the conclusion that was reached in Footnote 3, even if there is not discussion of the bases that led up to the conclusion which is reflected in Footnote 3. Thank you, counsel. Mr. Hall, you have reserved some rebuttal time. Yes, thank you, Your Honor. First of all, I'd like to point out that both of the contracts that were to be signed in this case were known contracts. The AI document is specified in the bid document. It just needs to be signed. Why shouldn't we just have a real simple rule so everybody doing these construction deals knows what they're getting into? If it says it's a contract, it's a contract. If it says it's a letter of intent, it isn't. One of the things that Rennick pointed out was if you let people go to a jury with letters of intent, then people just can't use them to make non-binding expressions of intention that they need in order to get the banks to lend and so forth. Usually, if you're building something that will require tenants, you can't get a construction loan unless you can show the bank that you've got some tenants lined up, but they won't commit themselves. Exactly because of the circumstances that this case presents, and that is the reasonably aroused expectations from all indications. Why would you have expectations if it says letter of intent and not contract at the top? In the Rennick case, there was specific language. The letter of intent was not to be a binding contract. That was decisive, and it's decisive in other cases set forth in my briefing. And that's not present here. Instead, there's a notice to proceed with the work. That's a different deal. That's a reasonably aroused expectation that we're here to enforce. Well, it is a notice to proceed, and that language is your best language, but it doesn't say proceed with the work. It says proceed with required preparatory activities. That's part of the work. You have to do that. You have to make your submittals before you get the permission to install the fixtures that you want to install. Proceed with the work means go on the site and start building, start laying conduit. A lot more has to go into it before that. Let me point out that when we did our discovery in this case, we subpoenaed Nelson's documents, and when Nelson's documents got subpoenaed, there was the contract, the subcontract, unsigned. Twenty-one percent of the work had been done without that subcontract being signed. The subcontract no one pays any attention to after the construction starts. It's all according to the bid documents, the drawings and the specifications. You build the project. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Kleinfeld